**Watkins Products, Inc. v. Smith**

*P. James O'Connor,* for plaintiff.

*Charles Polis* and *Jack Feinstein,* for defendants.

CAVANAUGH, J., July 22, 1969.—This is a suit in assumpsit by Watkins Products, Inc. (Watkins) against Delmas R. Smith (Smith) who allegedly purchased $6,108.91 in merchandise from plaintiff Watkins, and a suit by Watkins against Andrew Ceppaluni (Ceppaluni) who allegedly signed as Smith's surety to the extent of $5,000.

At the conclusion of the evidence, the court directed a verdict against Smith for $6,108.91, as the evidence presented no fact issue with respect to that amount owing from Smith to Watkins.

Defendant Ceppaluni raises several legal defenses to his surety agreement. With respect to the change of Watkins name (the complaint was filed under "Watkins Products, Inc." while the surety agreement is in the name of "The J. R. Watkins Company"), counsel for Ceppaluni now advises the court that the defense is withdrawn. In any event, the defense as shown by the evidence is meritless. See 6 Fletcher Cyclopedia Corporations, 2456 (1968).

Both parties devote argument to the question whether there was legal consideration for the surety

agreement. See 72 C.J.S. 72(b) and 20 Am. Jur., sec. 20, for the proposition that there must be fresh consideration to the surety where he assures an existing debt.

In my view, the issue of consideration is foreclosed by the Act of May 13, 1927, P. L. 985, 33 PS §6, which provides as follows:

"A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, *in any form of language,* that the signer intends to be legally bound." (Italics supplied.)

As the instant surety agreement contains the statement that ". . . this undertaking is and shall be binding upon us and our heirs and representatives," and other language to the effect that it shall be legally binding, Ceppaluni is bound regardless of consideration. Moreover, the surety recites acknowledgment of consideration. And finally, consideration is implied if a surety is signed concurrently with a basic contract. However, Ceppaluni is entitled to the benefits of a "gratuitous" surety (see e.g., Manufacturers & Merchants Building and Loan Association v. Wiley, 321 Pa. 340 (1936) ) regardless of whether the stated consideration of $1 was, in fact, paid.

Thus, the court held as a matter of law that there was a valid enforceable surety agreement between the parties on the issues discussed above, and that the evidence presented only one fact issue for the jury concerning the validity of the surety agreement. That issue concerned the duty of Watkins to disclose facts to Ceppaluni with respect to the surety agreement (see e.g., Park Paving Co. v. Kraft, 262 Pa. 178 (1918), Restatement, Security, §124, and 10 Williston on Contracts (3rd ed., 1967) §124, p. 795) and was sub-

mitted to the jury in the following special interrogatory:

"Did Watkins Products, Inc. know or have reasonable grounds to believe that Andrew Ceppaluni was induced to enter into the contract of suretyship in ignorance of facts which materially increased the risk attendant to the suretyship; did Watkins Products, Inc. have knowledge of such facts; did Watkins Products, Inc. have an opportunity to inform Andrew Ceppaluni of such facts before he accepted his undertaking (that is, signed the contract) and did Watkins Products, Inc. willfully fail to inform him of such facts under such circumstances as would amount to fraudulent concealment."

The jury answered that interrogatory in the negative and absent motions and argument from counsel, the court will not set aside that finding.

The remaining issue for the court is whether the suretyship speaks only of Ceppaluni's assuring debts subsequent to its execution or whether Ceppaluni assured Smith's existing debts with Watkins at the time the agreement was entered. Ceppaluni relies on Tide Water Oil Company v. Rife, 56 Lanc. 210 (1956), for the proposition that the suretyship speaks only in futuro. In Tide Water, defendant surety signed a suretyship agreement which provided, in part, that ". . . as an inducement to Tide Water to sell and deliver its merchandise and other property, and advance credit therefor to Bernard J. Rife, Jr. . . ." This language the court referred to as the purpose of the surety agreement and held that the language was "clear and free from doubt." That is, the agreement contemplated that plaintiff creditor would sell the debtor its merchandise *on credit* if defendant surety would insure or guarantee (these terms are not used in their technical legal meaning) the debtor's credit.

However, the Tide Water suretyship also provided that defendant surety guarantees prompt payment "of any and all sums of money now due" and also a guarantee "for merchandise and other property heretofore sold or hereafter to be sold and delivered by it (Tide Water) to the Principal Debtor, and for any other indebtedness legally created by the Principal Debtor."

Notwithstanding that language which followed the "purpose" clause, the court held ". . . that the intention of the parties was fully stated in that part of the agreement which set forth the purpose for which the writing was given and that the parties did not intend to expand the agreement to include an old indebtedness not covered by the stated purpose." Accordingly, the agreement was held not to cover preexisting debts.

As in Tide Water, the "purpose" clause of the instant agreement is ". . . the extension of credit and/ or the sale and delivery of merchandise to Delmas R. Smith. . . ." Thereafter, the agreement provides that the surety, Ceppaluni, assures payment ". . . of all indebtedness to the Company (Watkins) now owing or hereafter incurred, by or for said Purchaser. . . ." Thus, to the extent of its first paragraph, the instant surety agreement is similar if not identical to the agreement in Tide Water with respect to the "purpose" clause being expanded by subsequent language to include pre-existing debts.

Watkins argues that Tide Water is distinguishable by reason of the language in the third paragraph of Ceppaluni's agreement:

"This contract shall continue as an open guarantee and promise of payment covering all such indebtedness incurred to the date hereof, and/or which may become due to the Company prior to Oct. 1, 1963."

While this language states more specifically than in Tide Water the purported suretyship for past as well as future debts, still paragraph three is inconsis-

tent with the express language of the purpose clause as that clause speaks only in futuro. ". . . the extension of credit and/or the sale and delivery of merchandise to Delmas R. Smith. . . ." As in Tide Water, Watkins needed "no inducement" to extend credit for that existing debt as it had already done so. Thus, as in Tide Water, subsequent language in the suretyship cannot be read to extend the surety's liability beyond that stated by the initial purpose clause; extension of credit.

Moreover, the agreement must be construed against Watkins as its scrivener (see Wiegand v. Wiegand, 349 Pa. 517 (1944) ), and Ceppaluni's liability as a "gratuitous" individual surety must be strictly construed and cannot be extended by implication: Manufacturers and Merchants Building and Loan Association v. Willey, 321 Pa. 340 (1936).

Accordingly, the court rules as a matter of law that Ceppaluni is liable as Smith's surety only for those debts incurred by Smith subsequent to July 12, 1960*.

As the evidence further shows that Watkins extended $7,214.88 in credit after July 12, 1960, with payments of $5,491.09, a verdict will be entered for Watkins Products, Inc., against Andrew Ceppaluni for the net credit owing of $1,732.79, with interest from August 8, 1961.

The parties are given 10 days from the date hereof to file appropriate motions.

---

* Ceppaluni's reliance on Restatement, Security, §86, is misplaced as the evidence shows Ceppaluni had ". . . adequate means of ascertaining with reasonable promptness and certainty that credit had been extended."